IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERTO MIRAMONTES ROMAN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S RULE 29 MOTION ON COUNT 4**<br><br>Case No. 2:13-CR-602-DN-DPB<br><br>District Judge David Nuffer |

Defendant Roberto Miramontes Roman requests entry of a judgment of acquittal on Count 4 of the Indictment pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Because the sufficient evidence was presented to permit a rational trier of fact to find the essential elements of Count 4 beyond a reasonable doubt, Mr. Roman's Rule 29 motion on Count 4 is DENIED.

## STANDARD OF REVIEW

"The standard [a defendant] must meet to prevail on [a Rule 29 motion for judgment of acquittal] is a difficult one[.]"[1] Under Rule 29, a judgment of acquittal must be entered on "any offense for which the evidence [presented at trial] is insufficient to sustain a conviction."[2] The trial evidence is viewed "in the light most favorable to the government in determining if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt."[3] And conflicting evidence is not weighed nor is the credibility of witnesses considered in

---

[1] *United States v. Haslip*, 160 F.3d 649, 652 (10th Cir. 1998).

[2] FED. R. CRIM. P. 29(a).

[3] *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000).

making this determination.[4] Entry of a judgment of acquittal "is only appropriate if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5]

## DISCUSSION

Count 4 of the Indictment charges Mr. Roman with carrying a firearm during and in relation to a drug trafficking offense.[6] Count 4 reads:

> On or about January 4, 2010, in the Central Division of the District of Utah,
>                     ROBERTO MIRAMONTES ROMAN,
> The defendant herein, did knowingly carry a firearm, to wit, an AK-47 rifle, during and in relation to a drug trafficking crime, distribution of methamphetamine, a violation of 21 U.S.C. § 841(a)(1), as alleged in Count 3 of this Indictment, which is incorporated by reference herein; all in violation of 18 U.S.C. § 924(c)(1)(A).[7]

The elements of Count 4 the government must prove beyond a reasonable doubt are: (1) Mr. Roman committed the crime of distribution of methamphetamine as charged in Count 3 of the Indictment; and (2) Mr. Roman used or carried a firearm during and in relation to the distribution of methamphetamine.[8] The elements of Count 3 the government must prove beyond a reasonable doubt are that on or about January 4, 2010: (1) Mr. Roman knowingly or intentionally distributed a controlled substance as charged; and (2) the substance was in fact methamphetamine.[9]

At trial, the government presented evidence on Counts 3 and 4 through the testimony of Ruben Chavez-Reyes and the prior statements to police and state court trial testimony of Mr. Roman. This evidence included that on January 4, 2010, Mr. Roman went to the apartment of Mr. Chavez-Reyes in Fillmore, Utah. Mr. Roman brought with him approximately five grams of

---

[4] *Id.*

[5] *Id*. (internal quotations omitted).

[6] Indictment, docket no. 1, filed Sept. 5, 2013.

[7] *Id*.

[8] *United States v. McKissick*, 204 F.3d 1282, 1292 (10th Cir. 2000).

[9] *United States v. Santistevan*, 39 F.3d 259, 255 (10th Cir. 1994).

methamphetamine and a loaded AK-47 rifle. Mr. Roman stayed at Mr. Chavez-Reyes's home for approximately six hours, during which time they smoked some of the methamphetamine Mr. Roman had brought. They drank beers, chatted, used social media, and watched television. Mr. Roman also showed Mr. Chavez-Reyes how to load the AK-47. And both men handled the firearm.

Mr. Roman and Mr. Chavez-Reyes had familiarity with methamphetamine, knew what the drug looked like, and had smoked it on previous occasions. They described the substance they smoked that day as methamphetamine. Mr. Roman did not require Mr. Chavez-Reyes to pay for the methamphetamine they smoked. Rather, he shared the methamphetamine with Mr. Chavez-Reyes.

Mr. Roman and Mr. Chavez-Reyes were good friends and had known each other for approximately eight months. Mr. Chavez-Reyes considered Mr. Roman like family and the two spent a considerable amount of time together. Mr. Roman had gone to Mr. Chavez-Reyes's home that day in part to socialize. Mr. Roman had also previously shown the AK-47 to Mr. Chavez-Reyes, and the two had shot the firearm at a gun range approximately three weeks earlier. Mr. Roman was not worried that he needed to protect himself from Mr. Chavez-Reyes, and Mr. Chavez-Reyes was not worried that Mr. Roman would threaten him with the AK-47. Mr. Chavez-Reyes testified that there was no reason for him to be concerned about the AK-47's presence in the apartment that day. Nevertheless, Mr. Roman indicated in his statements to police that he had told someone that he had the AK-47 and would use the gun if he was stopped by the police. Mr. Roman also indicated that he made the statement to look tough and act cool.

The government also elicited testimony relating to Counts 3 and 4 through Drug Enforcement Administration Agent Jeffery Bryan, an expert in the nature of drug distribution,

3

quantities, how drug organizations operate and work, and how drugs are smuggled. Agent Bryan described methamphetamine's appearance, how the drug is used and its effects, and how it is manufactured and distributed. Agent Bryan also testified that there is a very close connection between firearms and drug distribution. He relayed that people who deal in drugs also deal with large amounts of cash due to the value of the drugs and that drug dealers typically sell to and deal with people who are not law abiding. Agent Bryan described that these factors, as well as law enforcement intervention, create an inherent risk for drug dealers, particularly dealers of methamphetamine. Agent Bryan testified that it is very common for methamphetamine dealers to carry firearms for intimidation, protection, and to avoid apprehension.

Viewing the trial evidence in a light most favorable to the government, substantial evidence exists from which the jury could find Mr. Roman guilty of Count 4 beyond a reasonable doubt. The evidence that Mr. Roman shared methamphetamine with Mr. Chavez-Reyes on January 4, 2010, is sufficient for the jury to find a knowing or intentional distribution of a controlled substance beyond a reasonable doubt. Sharing a controlled substance constitutes a transfer of possession or control, and falls within the meaning of distribution.[10] Further, Mr. Roman and Mr. Chavez-Reyes's familiarity with methamphetamine and description of the substance they smoked that day, as well as Agent Bryan's description of methamphetamine's appearance, is sufficient for the jury to find that the substance Mr. Roman shared with Mr. Chavez-Reyes was in fact methamphetamine.

The evidence that Mr. Roman also brought the AK-47 to, and handled the firearm at, Mr. Chavez-Reyes's apartment on January 4, 2010, is sufficient for the jury to find that he carried the firearm that day. A defendant knowingly "carries" a firearm when he (1) possesses the firearm

---

[10] *United States v. Bowline*, --- Fed.Appx. ---, 2016 WL 7487717, *2 (10th Cir. 2016) (citing *United States v. Asch*, 207 F.3d 1238, 1245 n.8 (10th Cir. 2000)).

through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.[11] Moreover, the AK-47 was loaded and Mr. Roman stated he had the AK-47 and would use it if stopped by police. Agent Bryan testified that methamphetamine dealers carry firearms for intimidation, protection, and to avoid apprehension. On these facts, the jury could find that Mr. Roman carried the AK-47 during and in relation to the distribution of methamphetamine that day.

The phrase "during and in relation to" encompasses that the firearm had the potential of facilitating the distribution of methamphetamine.[12] While Mr. Roman may not have been worried that he needed to protect himself from Mr. Chavez-Reyes, and Mr. Chavez-Reyes was not worried that Mr. Roman would threaten him or concerned about the AK-47's presence in his apartment that day, the jury may still reasonably infer that Mr. Roman carried the AK-47 that day for protection from others and to avoid apprehension from police if stopped before or after leaving Mr. Chavez-Reyes's apartment. A firearm plays an integral part in the distribution of methamphetamine when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence.[13] A direct connection between the carrying of the firearm and the distribution must exist, but the distribution need not be the sole reason the firearm is carried.[14] This element is satisfied if the defendant intended the firearm to be available for use in the distribution offense.[15]

---

[11] *United States v. Lindsey*, 389 F.3d 1334, 1338 (10th Cir. 2004).

[12] *McKissick*, 204 F.3d at 1292-93.

[13] *Id*.

[14] *United States v. Winder*, 557 F.3d 1129, 1139 (10th Cir. 2009).

[15] *Id*.

Therefore, Mr. Roman's Rule 29 motion regarding Count 4 must be DENIED. When the evidence is viewed in the light most favorable to the government, there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt.[16]

## ORDER

IT IS HEREBY ORDERED that Mr. Roman's Rule 29 motion regarding Count 4 is DENIED.

Signed February 4, 2017.

BY THE COURT

_____

District Judge David Nuffer

---

[16] *Austin*, 231 F.3d at 1283.